UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWNE A SANZONE, Personal Representative of the Supervised Estate of Keith R. Koster, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:15-cv-01301-TWP-TAB ) |
| OFFICER WILLIAM "BILLY" MURPHY, in his official and individual capacities, OFFICER JAMES GRAY, in his official and individual capacities, OTHER UNKNOWN OFFICERS AND PERSONNEL OF THE CITY OF INDIANAPOLIS, in their official capacities, CONSOLIDATED CITY OF INDIANAPOLIS, MARION COUNTY, INDIANA, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment filed by Defendants William "Billy" Murphy ("Officer Murphy"), James Gray ("Officer Gray"), and the City of Indianapolis ("the City") (collectively, "Defendants") (Filing No. 67). After a call to Indianapolis Metropolitan Police Department ("IMPD") for medical help, Keith R. Koster ("Koster"), the subject of the call, was shot and killed by Officer Gray. Plaintiff Dawne A. Sanzone, as personal representative of Koster's estate ("the Estate"), filed this action against Defendants for violation of Koster's federal civil rights under the Fourth Amendment, as well as assault and battery, false arrest, and wrongful death under Indiana law. (Filing No. 11.) Defendants move for summary judgment as to all claims alleged in the Amended Complaint. For the following reasons, the Court **grants in part and denies in part** the Defendants' Motion for Summary Judgment.

## I. BACKGROUND

As with any summary judgment motion, the following facts are reviewed in the light most favorable to the nonmoving party, in this case the Estate, and the Court draws all reasonable inferences in the Estate's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

On January 21, 2014, at approximately 8:15 a.m., Koster left a voice message on his friend Timothy Bess' ("Bess") telephone, stating: "Call me back please." ([Filing No. 77-1 at 1](Filing No. 77-1 at 1).) When Bess returned Koster's call, Bess could hear Koster throwing up and having a hard time breathing. *Id.* at 2. Bess attempted to persuade Koster to go to the hospital but, in the middle of Bess' attempt, the call dropped. *Id.* at 4. Bess called Koster again, but received a busy signal. *Id.* at 4-5. Thereafter, because Bess lives in a different state, he called IMPD and asked if they could send an ambulance to do a wellness-check on Koster because Koster was having trouble breathing. Bess informed the dispatch operator that Koster was not suicidal but suffers from chronic fatigue and did not want to go to the hospital. Bess then provided the dispatch operator with Koster's cell phone number.

When the dispatcher called, Koster picked up and began breathing into the phone in an extremely labored manner. The dispatcher asked Koster if he was having trouble breathing, and Koster responded "yes". The dispatcher told Koster that she was going to contact an ambulance and asked him if he would open the door for paramedics when they arrived. Koster responded: "No. I don't know if I even can." Koster stated he had been kicked out of the emergency room and he did not want the ambulance to come without an "advocate". The dispatcher informed Koster that ambulance personnel would have to force entry, to which he replied: "the office has keys." The dispatcher then stated that someone would call the office and that paramedics were on

their way, but Koster stated: "No." The dispatcher asked Koster if he had any weapons, however, Koster hung up the phone without responding. After Koster hung up, the dispatcher called Sarah Hunt ("Hunt"), the apartment manager, and asked Hunt to provide keys to Koster's apartment so that paramedics and police officers could enter and help Koster. ([Filing No. 77-3 at 1-2](#).)

Shortly thereafter, Officer Murphy arrived at Koster's apartment and was met by Hunt. Officer Murphy knocked on Koster's door and, when Koster did not answer, Hunt handed Officer Murphy the keys. *Id.* at 3. Officer Murphy opened the door and Koster stated: "Don't come in. I don't want you to come in." *Id*. Despite Koster's statement, Hunt entered the apartment and offered to help Koster by calling a friend. *Id*. at 3-4. Koster explained to Hunt that he was "trying to take pills to be able to talk and type," he was kicked out of two emergency rooms, and he eventually told Hunt to call his friend Doran, who Koster later referred to as his "medical advocate." *Id*. at 4. While Hunt spoke to Koster, Lieutenant Benjamin Holton of the Indianapolis Fire Department ("Lt. Holton") arrived at Koster's apartment. *Id*. Hunt informed Koster that she had to leave and could not be in the apartment because the officers and paramedics needed to come in and help him. *Id.* Koster again stated "no," he did not want them to enter. *Id.*

Lt. Holton announced from Koster's doorway that they needed to enter the apartment to help him. *Id*. at 4-5. Koster responded: "If you enter my apartment I will shoot you." *Id.* at 5. At that moment, Hunt looked down and noticed a gun in Koster's right hand, partially covered by a blanket. *Id*. Hunt backed out of Koster's apartment and, once she was outside of the apartment, Hunt announced that Koster had a gun. *Id*.

After learning of the gun, Officer Murphy propped Koster's door open with a fire tool and ordered Lt. Holton to evacuate all apartments surrounding Koster's unit, as well as all apartments on the second floor. Officer Murphy positioned himself in Koster's doorway and drew his weapon.

3

While standing in the doorway, Officer Murphy radioed for assistance, announcing he had "a subject with a gun." ([Filing No. 77-4 at 11](#).) Officer Murphy also radioed his supervisor, who decided to call the SWAT team. While waiting on SWAT to arrive, Officer Murphy attempted to negotiate with Koster, requesting Koster to put his gun down so that he can get medical help. Koster did not comply.

Once SWAT arrived at the scene, SWAT negotiators Daniel Rosenberg ("Officer Rosenberg") and Eli Raisovich replaced Officer Murphy. Officer Rosenberg positioned himself in Koster's doorway and acted as the primary negotiator. Officer Rosenberg introduced himself to Koster and observed Koster laying at an angle on his bed, which was a mattress on the floor, with his back visible from the door. Officer Rosenberg also noticed a black revolver in Koster's right hand that was lowered down to his side. ([Filing No. 69-7 at 6](#).) Koster informed Officer Rosenberg of his health issues and that hospitals refused to help him. At some point during Officer Rosenberg's communications, Koster again asked for his "medical advocate," Doran. *Id*. at 7. Officer Rosenberg responded, Doran could not come inside the apartment while Koster was holding a gun. Officer Rosenberg assured Koster that if he put the gun down, the officers would get him to his medical advocate. *Id*. at 12.

More officers arrived including Chris Phemster ("Officer Phemster") who positioned himself in front of Officer Rosenberg with a ballistic shield in one hand and a .40 caliber Glock in his other hand, as well as Justin Reese ("Officer Reese") who stood to the left of Officer Phemster with his gun drawn. Soon after, SWAT team Officer Gray and Sergeant Steve Walters ("Sgt. Walters") arrived. Officer Gray was armed with an MP5 submachine gun and Sgt. Walters had a less lethal bean bag shotgun. Upon arriving, Officer Gray quickly instructed Officer Reese that he

maintained "priority of shot." There were now a total of five tactically dressed officers standing in Koster's doorway with their firearms drawn.

The conversation between Officer Rosenberg and Koster continued and appeared to be going well. At some point, Koster asked to speak to his brother, Kurt Koster of the IMPD, however, none of the officers contacted Officer Kurt Koster. Officer Rosenberg, instead, informed Koster that he could not let anyone into the apartment until Koster put down his gun. In response, Koster became agitated and stated: "you're not gonna try to let him in…you should try, you're not trying to let him in." ([Filing No. 77-8 at 3](#).) At this point, all officers in the doorway took cover with the ballistic shield.

By this time, Koster was sitting up, cross-legged on his bed with his hands in his lap. ([Filing No. 69-10 at 31](#).) Officer Rosenberg continued negotiating with Koster. However, Koster became more agitated when the officers refused to leave and informed the officers that he intended to "fire a warning shot." ([Filing No. 77-9 at 10](#).) Officers observed movement of Koster's shoulder as he began to raise up his arm that was holding the handgun. ([Filing No. 69-10 at 36](#).) Noticing the handgun, Officer Gray began to point his firearm at Koster. *Id*. Koster's arm came to a full extension. *Id.* Sgt. Walters, armed with the less lethal bean bag shotgun, stated: "everyone…stay down, if this goes bad I'm going to fire a less lethal round first so don't jump up. I don't want to…hit you in the back of the head with a less lethal bean bag at point blank range." ([Filing No. 77-10 at 8](#).) Almost simultaneously with Sgt. Walters' firing the less lethal bean bag shotgun, Officer Gray fired two or three shots with his MP5 submachine gun. Two shots fired by Officer Gray hit Koster in the head and the neck, killing him.

Thereafter, on September 21, 2015, Dawn Sanzone as personal representative of the Estate filed an Amended Complaint, asserting false arrest and excessive force in violation of the Fourth

5

Amendment, as well as assault and battery, false arrest, and wrongful death of her brother, under Indiana law. (Filing No. 11.) Defendants move for summary judgment as to all claims alleged in the Amended Complaint, contending Officers Gray and Murphy are entitled to qualified immunity. (Filing No. 67.)

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted). Finally, on "summary judgment a court may not make credibility determinations, weigh the evidence, or

decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

### III. DISCUSSION

Defendants move for summary judgment on the Estate's Fourth Amendment claims of excessive force and unreasonable seizure, asserting that Officer Gray and Officer Murphy had probable cause to arrest Koster, Koster was not "seized" as required by the Fourth Amendment, and Officer Gray's use of deadly force was not excessive. In addition, Defendants move for summary judgment on the state law claims against the City, contending that those claims fail as a matter of law.

### A. Roger Clark's Expert Report.

As an initial matter, Defendants ask the Court to disregard the expert report of Roger A. Clark ("Clark"), a twenty-seven year veteran of the Los Angeles County Sherriff's Department, who concluded that "based on Officer Gray's statement, Koster never threatened to shoot any Officer, never stood up, and never fully turned his body at the Officers; therefore, Officer Gray's use of deadly force was unreasonable, unnecessary, and excessive and violated policy and law." ([Filing No. 77-14 at 12](#).)

Defendants argue that Clark was not a witness to the events at issue in this case and, therefore, cannot give his own account of the events. Defendants specifically take issue with Clark's conclusion that:

> Regardless of Koster's mental state of mind or mental impairments, officers are trained that they are the professionals responsible for their tactical decisions when they use lethal force. The tactical decisions of Officer Gray and Sergeant Walters, (and other officers at the scene), demonstrates that they failed to remain in cover and correctly deploy the less lethal options obviously available to them (including the impact weapon). In particular, *Officer Gray's failure to await and observe the result of the less-lethal force use on Koster and his immediate use of lethal force (shooting) on Koster appears per se in this incident as an excessive and*

7

> *unnecessary use of lethal force in violation of training, policy and law (as trained to all officers).*

([Filing No. 77-14 at 9](Filing No. 77-14 at 9)) (emphasis added). Clark goes on to opine that:

> Reasonable officers do not shoot at a person who has expressed no intent to harm anyone but himself. Passive resistance, which is simply refusing to follow orders, is never justification for deadly force. Only active resistance, which means physically resisting, merits any significant use of force. And even then, deadly force is very rarely, if ever merited. In this incident, Koster showed passive resistance on the scene by ignoring officer commands, which is common in sick, impaired and/or emotionally distraught individuals.

*Id.* at 9-10. Defendants contend that Clark's legal conclusions appear to be drawn from assumptions that contradict the undisputed evidence—namely, the officers' contention that Koster pointed a gun at them—and argue that the Court should exclude Clark's testimony because it would not assist the trier of fact. "Expert evidence is admissible only when it will 'assist' the trier of fact." *Pena v. Leombruni*, 200 F.3d 1031, 1034 (7th Cir. 1999) (citing Fed. R. Evid. 702).

After reviewing the record, the Court declines to exclude the testimony of Clark because, as the Estate persuasively argues in response, Defendants challenge Clark's opinions rather than his expertise in police training, policy and law. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("the court's gatekeeping function focuses on an examination of the expert's methodology. The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment."). The Court concludes that the question of whether Clark is credible or whether his theories are correct "is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *See id.* Accordingly, Defendants' request to exclude the testimony of Clark is **denied**.

### B. **<u>Probable Cause.</u>**

With respect to the merits of this case, Defendants first argue the officers had probable cause to arrest Koster. Defendants rely on § 12-26-4-1 of the Indiana Code when contending that there were reasonable grounds to believe Koster suffered from a mental illness and needed immediate hospitalization because Officer Murphy contends he observed Koster taking pills with a gun in his hand. *See* IND. CODE § 12-26-4-1 ("[a] law enforcement officer, having reasonable grounds to believe that an individual has a mental illness, is either dangerous or gravely disabled, and is in immediate need of hospitalization and treatment, may … [a]pprehend and transport the individual to the nearest appropriate facility").

Defendants also argue that the officers had probable cause to arrest Koster because when they first entered the apartment, Koster pointed a loaded firearm at Hunt and Lt. Holton. *See* IND. CODE § 35-47-4-3 ("[a] person who knowingly or intentionally points a firearm at another person commits a Level 6 felony"); IND. CODE § 35-42-2-2 ("[a] person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness"); IND. CODE § 35-45-2-1 ("[a] person who communicates a threat to another person, with the intent: … that the other person be placed in fear of retaliation for a prior lawful act … commits intimidation a Class A misdemeanor").

In response, the Estate argues that Defendants' probable cause arguments fail because: 1) Officer Murphy did not believe that Koster suffered from a mental illness, and 2) a material issue of disputed fact remains regarding whether Koster pointed a firearm at Lt. Holton and Hunt when they first entered the apartment. The dispatch run to Koster's apartment was for a welfare check based on Koster having difficulty breathing. The Estate notes that in Officer Murphy's deposition, he conceded that when he first observed Koster it did not appear that Koster suffered from any sort

9

of mental illness. ([Filing No. 77-4 at 9](#).) The Estate argues without the presence of a mental illness, Defendants' probable cause argument under § 12-26-4-1 fails. *See* IND. CODE § 12-26-4-1. The Estate also contends that a material issue of fact exists regarding whether Koster pointed a firearm at Lt. Holton and Hunt because Hunt never states that Koster pointed a gun at anyone. Hunt states only that Koster told Lt. Holton, "if you enter my apartment I will shoot you" ([Filing No. 77-3 at 5](#)) and, at that moment, Hunt looked down and noticed a gun in Koster's right hand, partially covered by a blanket.

The question of probable cause must be answered by the jury "if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). When viewing the facts in the light most favorable to the Estate, summary judgment is not appropriate based on Defendants' probable cause arguments because the Estate presented unrebutted evidence that Officer Murphy did not initially believe Koster suffered from a mental illness and a material issue of fact remains regarding whether Koster actually pointed a firearm at Lt. Holton and Hunt.

**C.** **Qualified Immunity.**

Defendants next assert that even if probable cause did not exist, Officers Gray and Murphy are entitled to qualified immunity against the Fourth Amendment claims alleged by the Estate. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who

knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (citation and quotation marks omitted).

To determine whether qualified immunity applies, the Court must determine whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court also determines "whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

### 1. Violation of a Constitutional Right

The Estate argues that Officer Murphy violated Koster's Fourth Amendment right when he unreasonably seized Koster and Officer Gray violated Koster's Fourth Amendment right when he used excessive force. Excessive force claims are analyzed using the Fourth Amendment's "reasonableness" standard in the context of "an arrest, an investigatory stop or any other type of seizure." *Stainback v. Dixon,* 569 F.3d 767, 771 (7th Cir. 2009). The Fourth Amendment protects against the use of force that is not "objectively reasonable." *Kinney v. Ind. Youth Ctr.*, 950 F.2d 462, 465 (7th Cir. 1991). The "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, this right is not without limits; a "police officer's use of force is unconstitutional if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (citation and quotation marks omitted).

Fourth Amendment unreasonable seizure claims, like excessive force claims, are analyzed in light of the totality of the circumstances to determine the objective reasonableness of the seizure.

11

To determine the reasonableness and therefore the constitutionality of a seizure, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) (citation and quotation marks omitted). In considering this balance, whether under an excessive force or unreasonable seizure claim, the court considers the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. When considering this balance, the court views the circumstances "from the perspective of a reasonable officer on the scene." *Id*.

The alleged unreasonable seizure consist of: 1) Officer Murphy refusing to leave Koster's apartment despite Koster repeatedly stating he did not want medical assistance, and 2) officer Murphy and other officers standing in Koster's doorway with firearms drawn and pointed at Koster. The excessive force claim consists of Officer Gray shooting and killing Koster.

### a. <u>Unreasonable Seizure</u>

Defendants argue the Estate's "unreasonable seizure" claim against Officer Murphy fails because although Officer Gray's use of deadly force against Koster amounted to seizure, Koster was not seized prior to that point because Koster did not submit to authority. *See California v. Hodari D*., 499 U.S. 621, 626 (1991) ("[a]n arrest requires *either* physical force…*or,* where that is absent, *submission* to the assertion of authority"); *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) ("[w]hile an officer's application of physical force always constitutes a seizure, a 'show of authority' alone is insufficient; an officer's show of authority becomes a seizure only if the person at whom it is directed actually submits to that authority"). Defendants concede that Officer Murphy, as well as the other officers (including Officer Gray) standing in Koster's

doorway with their guns drawn could be objectively viewed as a show of authority because a reasonable person would not feel free to leave; however, Defendants argue that Koster's refusal to put his gun down establishes that he never submitted to the officers' show of authority.

In response, the Estate relies on *Ewolski* and *Estate of Escobedo* when asserting the officers barricading Koster in his studio apartment with no means of leaving is sufficient to satisfy the "submission" requirement. *See Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002) (holding the district court erred when concluding a plaintiff was not seized under the Fourth Amendment because, by barricading himself in his home, the plaintiff never submitted to authority); *Escobedo v. City of Fort Wayne*, No. 1:05-CV-424-TS, 2008 WL 1971405, at *23 (N.D. Ind. May 5, 2008) (holding, where a decedent retreated into his apartment, "it would be reasonable to conclude that [the person] has been seized although no one laid hands on [the person]" and "[i]t is enough that as a result of a prominent show of authority," a reasonable person in the decedent's place "was immediately confined to a small space with no viable means of otherwise terminating the encounter").

The Court agrees with the Estate that Koster was seized because Koster was barricaded in his studio apartment without any exit while Officer Murphy and others stood blocking the doorway with guns drawn and pointed at Koster. *See Ewolski*, 287 F.3d at 506; *Escobedo*, 2008 WL 1971405, at *23. The Court, however, finds the Estate has not shown that Officer Murphy *unreasonably* seized Koster because a reasonable officer on the scene would not have understood that Officer Murphy's actions violated Koster's Fourth Amendment right. Officer Murphy was called to the scene because Koster was having trouble breathing and possibly needed medical assistance. He testified that he witnessed Koster swallowing several pills while holding a gun in his hand. Based on these facts, the Court concludes a reasonable officer in Officer Murphy's

13

situation would believe that immediate detention was necessary in order for Koster to receive medical attention and assistance. Accordingly, the evidence supports Officer Murphy's claim for qualified immunity.

  b.  **Excessive Force**

The Estate asserts the force used against Koster to effectuate his seizure was excessive, such that it violated his Constitutional rights. Defendants assert that Officer Gray did not use excessive or unreasonable force when killing Koster because Officer Gray reasonably feared that he and the other officers could suffer serious bodily injury or death when Koster raised his gun and stated he was going to "fire a warning shot." *See Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002) ("when an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force"). In response, the Estate relies on the expert opinion of Clark when arguing that it was unreasonable for Officer Gray to use deadly force when shooting and killing Koster, under the circumstances in this case.

Considering the factors outlined in *Graham*—the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight—the Court concludes that questions of fact remain that should be resolved by a jury. The Court first notes that IMPD was called to provide medical help to Koster, rather than to investigate a crime. Officer Gray conceded at the time he arrived at Koster's doorway, he did not believe Koster had committed any crime. (Filing No. 77-7 at 23.) However, five officers, including Officer Gray, stood in Koster's doorway with their firearms drawn and refused to leave despite Koster's repeated requests. The Estate argues that Koster was not attempting to evade arrest and flight is not a factor because Koster was ill in his

bed, barely able to breathe, and, he was barricaded by several well-armed officers. With respect to the final factor, the Estate relies on the expert opinion of Clark when arguing that it was reasonable for Officer Gray to use of deadly force when shooting and killing Koster. Specifically, Clark opines that in violation of policy and training, officers at the scene failed to remain in cover and correctly deploy the less lethal options available to them; and Koster's refusal to follow orders (passive resistance) is common in sick, impaired and/or emotionally distraught individuals and never justification for deadly force. The Estate argues persuasively that based on the totality of circumstances at the time of the seizure, Officer Gray used greater force than was reasonably necessary to make the arrest.

## 2. **Clearly Established Right.**

Koster's Fourth Amendment rights must also be clearly established. "To be clearly established, at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (citation and quotation marks omitted). "While a case directly on point is not required, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation and quotation marks omitted).

In the context of a claim for excessive force, "there is no doubt that [case law] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 201–02.

> Yet that is not enough. Rather, we emphasized in *Anderson* "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 202.

### a. Unreasonable Seizure

The Estate responds to Officer Murphy's claim to qualified immunity for false arrest and unreasonable seizure by asserting it is "clearly established that a citizen may not be detained by law enforcement officials without probable cause." *See Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (holding at the time police officers illegally searched plaintiff's apartment and detained plaintiff, it was clearly established that the officers could not detain or search a person's apartment without probable cause).

The Court again finds that the Estate has not shown Officer Murphy unreasonably seized Koster. Unlike the officers in *Jacobs* who conducted an illegal search and arrest without probable cause, a reasonable officer in Officer Murphy's situation would not have understood that Officer Murphy violated Koster's Fourth Amendment right. Accordingly, Defendants' qualified immunity claim for Officer Murphy is **granted**.

### b. Excessive Force

The Estate contends that under the facts of this case, the right to be free from excessive force has been clearly established. *See Sallenger v. Oakes*, 473 F.3d 731, 742 (7th Cir. 2007) (holding a decedent's right to be free from excessive force was clearly established at the time of the incident where officers punched the decedent while he was handcuffed and failed to place decedent in the proper position after putting a cord, known as a hobble, around decedent's lower legs). The Estate points to Officer Gray's concessions that his close proximity to Koster increased the danger of the situation, yet he chose not to back away from Koster's door or otherwise temporarily disengage from the situation. They also point to Sgt. Walters' statement for everyone to "stay down, if this goes bad I'm going to fire a less lethal round first so don't jump up" and

Officer Gray's failure to wait before firing two or three rounds simultaneously from his MP5 submachine gun.

The Estate further relies on Clark's expert opinion that "Officer Gray's failure to await and observe the result of the less-lethal force use on Mr. Koster and [Officer Gray's] immediate use of lethal force" appears to be "in violation to training, policy, and law." (Filing No. 77-14 at 9.) The Estate asserts that under these facts, it is clear that Officer Gray violated Koster's Fourth Amendment rights.

In considering the issue of qualified immunity and viewing the totality of the circumstances surrounding Koster's death, as well as Clark's expert opinion, the Court finds the Estate has shown that Officer Gray's force was "so plainly excessive under the circumstances that a reasonable officer would have known of the constitutional violation" and that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Accordingly, Officer Gray's claim for qualified immunity claim is **denied**.

### D. State Law Tort Claims.

Defendants move for summary judgment on the Estate's state law tort claims for assault and battery, false arrest, and wrongful death against the City under the doctrine of *respondeat superior*. Defendants assert that if the Court concludes Officer Gray and Officer Murphy acted reasonably under the Fourth Amendment, then the state law claims must be decided in favor of the City. *See Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010) ("[i]f an officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery"); *Garrett v. City of Bloomington*, 478 N.E.2d 89, 95 (Ind. Ct. App. 1985) (under Indiana law, false arrest is actionable only when a plaintiff proves the arrest was made without probable cause). Because the Court found that Officer Murphy acted reasonably summary judgment is **granted** with respect to the

state tort claim for false arrest.  Likewise, because the Court found that a material issue of fact remains regarding whether Officer Gray acted reasonably, summary judgment is **denied** with respect to the state tort claims for assault and battery and wrongful death.  These claims against the City remain for a jury to decide.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment.  ([Filing No. 67](#).)  Officer Murphy is entitled to qualified immunity on the Fourth Amendment claim against him for False Arrest, therefore, summary judgment is **GRANTED as to Count I** and Officer Murphy is **terminated** from this action.  Summary judgment is also **GRANTED as to Count IV**, the state law claim for false arrest.  Viewing the facts most favorable to the Estate, Court finds a reasonable officer in Officer Gray's position would have known that, under the Estate's version of events, shooting Koster with his submachine gun was an excessive use of force. Material issues of fact remain regarding whether it was objectively reasonable for Officer Gray to use deadly force.  Therefore, summary judgment is **DENIED with respect to Count II as well as** the state law claims against the City for Assault and Battery (**Count III**) and Wrongful Death (**Count V**).

**SO ORDERED.**

Date:  5/1/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
alowe@rwp-law.com

James Piatt
RILEY WILLIAMS & PIATT, LLC
jpiatt@rwp-law.com

Joseph N. Williams
RILEY WILLIAMS & PIATT, LLC
jwilliams@rwp-law.com

William N. Riley
RILEY WILLIAMS & PIATT, LLC
wriley@rwp-law.com

William Edwin Wendling, Jr.
COHEN GARELICK & GLAZIER
wwendling@cgglawfirm.com

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
CITY OF INDIANAPOLIS
adam.willfond@indy.gov

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
CITY OF INDIANAPOLIS
thomas.moore@indy.gov