UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWNE A SANZONE Personal Representative of the Supervised Estate of Keith R. Koster, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> OFFICER WILLIAM "BILLY" MURPHY, OFFICER JAMES GRAY, OTHER UNKNOWN OFFICERS AND PERSONNEL OF THE CITY OF INDIANAPOLIS in their official capacities, CONSOLIDATED CITY OF INDIANAPOLIS, MARION COUNTY, INDIANA, <br><br> Defendants. | Case No. 1:15-cv-01301-TWP-TAB |

## ORDER ON MOTION FOR RELIEF FROM JUDGMENT

This matter is before the Court on Plaintiff Dawne A. Sanzone's ("Sanzone") Motion for Relief from Judgment filed pursuant to Federal Rule of Civil Procedure 60(b) (Filing No. 103). Following the grant in part and denial in part of a Motion for Summary Judgment (Filing No. 84) filed by Defendants Officer William Murphy ("Officer Murphy"), Officer James Gray ("Officer Gray"), Other Unknown Officers and Personnel of the City of Indianapolis and the Consolidated City of Indianapolis, Marion County, Indiana ("the City of Indianapolis"), Officer Gray appealed to the United States Court of Appeals for the Seventh Circuit (Filing No. 85). The Court of Appeals reversed and remanded, instructing the Court to enter summary judgment in Officer Gray's favor, which this Court did. (Filing No. 97; Filing No. 98.) The Court later entered summary judgment on behalf of Defendant, the City of Indianapolis, on all claims[1]. (Filing No. 101.) Sanzone filed

---

[1] The claims against Other Unknown Officers and Personnel of the City of Indianapolis, inadvertently were not terminated. The Court now terminates any claim against this party for the reasons stated in Filing No. 101.

the instant motion for relief the final judgment entered at Filing No. 102. For the following reasons, the Court **denies** Sanzone's Motion for Relief from Judgment.

## I. BACKGROUND

### A. The Facts

The facts of this case are set forth in detail in the Courts' Entry on Defendants Motion for Summary (Filing No. 84) and thus, are only summarized in this Order. On January 21, 2014, Keith R. Koster ("Koster") left a voice message on his friend Timothy Bess' ("Bess") telephone, indicating that Koster was in distress. Because Bess lived in a different state and could not check on Koster himself, he called the Indianapolis Metropolitan Police Department ("IMPD") and asked if they could send an ambulance to do a wellness-check on Koster. An IMPD dispatcher spoke with Koster over the telephone and informed him that she was going to contact an ambulance. The dispatcher asked Koster if he would open the door for paramedics when they arrived and Koster responded that he would not let them in. The dispatcher called Sarah Hunt ("Hunt"), the apartment manager, and asked Hunt to provide keys to Koster's apartment so that upon their arrival, paramedics and police officers could enter and help Koster.

Shortly thereafter, Officer Murphy arrived at Koster's apartment, where Hunt met him. Officer Murphy and Hunt opened the door and Koster stated: "Don't come in. I don't want you to come in." A short time later, Lieutenant Benjamin Holton of the Indianapolis Fire Department ("Lt. Holton") arrived at Koster's apartment and announced from Koster's doorway that they needed to enter the apartment to help him. Koster responded: "If you enter my apartment I will shoot you." At that moment, Hunt looked down and noticed a gun in Koster's right hand, partially covered by a blanket. Hunt backed out of Koster's apartment and, once she was outside of the apartment, announced that Koster had a gun.

After learning of the gun, Officer Murphy radioed his supervisor, who decided to call the special weapons and tactics ("SWAT") team. While waiting on SWAT to arrive, Officer Murphy attempted to negotiate with Koster, requesting that Koster put his gun down so that he could receive medical attention. Koster did not comply.

Once SWAT arrived at the scene, SWAT negotiators Daniel Rosenberg ("Officer Rosenberg") and Eli Raisovich attempted to negotiate with Koster to put the weapon down. Officer Rosenberg observed Koster laying at an angle on his bed, which was a mattress on the floor, with his back visible from the door. Officer Rosenberg also noticed a black revolver in Koster's right hand that was lowered down to his side. More officers arrived on the scene. Officer Chris Phemster ("Officer Phemster") positioned himself in front of Officer Rosenberg with a ballistic shield in one hand and .40 caliber Glock in his other hand. Officer Justin Reese ("Officer Reese") stood to the left of Officer Phemster with his gun drawn. Soon after, SWAT team Officer Gray and Sergeant Steve Walters ("Sgt. Walters") arrived. Officer Gray was armed with an MP5 submachine gun and Sgt. Walters had a less lethal bean bag shotgun. Upon arriving, Officer Gray quickly instructed Officer Reese that he maintained "priority of shot"—meaning he occupied a position with the best viewpoint to shoot. At this point, there were a total of five tactically dressed officers standing in Koster's doorway with their firearms drawn.

The conversation between Koster and Officer Rosenberg continued and at a point, Koster became agitated. All officers in the doorway took cover with the SWAT teams ballistic shield. By this time, Koster was sitting up, cross-legged on his bed with his hands in his lap. ([Filing No. 69-10 at 31](Filing No. 69-10 at 31).) Officer Rosenberg continued negotiating with Koster. However, Koster became more agitated when the officers refused to leave and informed the officers that he intended to "fire a warning shot." ([Filing No. 77-9 at 10](Filing No. 77-9 at 10).) Officers observed movement of Koster's shoulder as he

3

began to raise up his arm that was holding the handgun. (Filing No. 69-10 at 36.) Noticing the handgun, Officer Gray began to point his firearm at Koster. *Id.* Koster's arm came to a full extension. *Id.* Sgt. Walters, armed with the less lethal bean bag shotgun, stated: "everyone…stay down, if this goes bad I'm going to fire a less lethal round first so don't jump up I don't want to…hit you in the back of the head with a less lethal bean bag at point blank range." (Filing No. 77-10 at 8.) Almost simultaneously with Sgt. Walters' firing the less lethal bean bag shotgun, Officer Gray fired two or three shots with his MP5 submachine gun. Two shots fired by Officer Gray hit Koster in the head and the neck, killing him.

**B.**     **Procedural History**

On September 21, 2015, Sanzone, as personal representative of Koster's estate, filed an Amended Complaint asserting five counts: (Count I) false arrest in violation of the Fourth Amendment against Officers Murphy and Gray, (Count II) excessive and deadly force in violation of the Fourth Amendment against Officers Murphy and Gray, (Count III) assault and battery under Indiana law against the City of Indianapolis, (Count IV) false arrest under Indiana law against the City of Indianapolis, and (Count V) wrongful death under Indiana law against the City of Indianapolis. (Filing No. 11.) This Court granted summary judgment as to Counts I and IV of the Amended Complaint and dismissed Officer Murphy. (Filing No. 84.) But this Court denied summary judgment as to Counts II, III, and V, finding that a material question of fact existed regarding whether Officer Gray acted reasonably, and therefore the Court could not determine at the summary judgment stage that he was entitled to qualified immunity. *Id.* at 16-17. Accordingly, the state law tort claims against the City of Indianapolis arising out of Officer Gray's actions remained.

Officer Gray appealed the Court's Entry on Summary Judgment to the United States Court of Appeals for the Seventh Circuit. (Filing No. 85.) In a *per curiam* opinion, the Court of Appeals determined the undisputed evidence showed that Koster pointed a firearm at Officer Gray and other officers, and that by law Officer Gray "did not violate Koster's Fourth Amendment right by defending himself and other officers once Koster pointed a gun at them." (Filing No. 97 at 10.) It consequently reversed and remanded to this Court "with instructions to enter judgment for Gray on the excessive-force claim," and to terminate him from this action. *Id.* at 12; Filing No. 98 at 1. The claims remaining were the state law claims against the City of Indianapolis for Assault and Battery (Count III) and Wrongful Death (Count V). In accordance with Local Rule 16-2, the parties were ordered to file their position statements regarding how the Court should proceed on the remaining state law claims. *Id*.

After consideration of the parties' position statements (Filing No. 99; Filing No. 100), summary judgment was granted in favor of the City of Indianapolis on all claims. (Filing No. 101.) Having resolved all claims as to all parties, the Court directed the entry of final judgment and dismissed the action with prejudice. (Filing No. 102.) Following that entry, pursuant to Federal Rule of Civil Procedure 60, Sanzone filed the instant Motion for Relief from Judgment. (Filing No. 103.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

"A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. Pro. 60(c)(1). Rule 60(d) explains, "[t]his rule does not limit a court's power to . . . set aside a judgment for fraud on the court." "To obtain relief under Rule 60(b)(3), a party must show that she has a meritorious claim that she was prevented from 'fully and fairly presenting' at trial as a result of the adverse party's fraud, misrepresentation, or misconduct." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010). "A party seeking to set aside a judgment under Rule 60(b)(3) or the court's inherent power must prove fraud by clear and convincing evidence." *Id.* at 759.

"Relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *United States v. One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d 713, 716 (7th Cir. 1985). A party requesting relief from a final judgment is required to make a strong showing under Rule 60(b) because of the "strong presumption against the reopening of final decisions." *Connecticut Nat'l Mortg. Co. v. Brandstatter*, 897 F.2d 883, 885 (7th Cir. 1990). Rule 60(b) "establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994).

### III. DISCUSSION

Sanzone seeks relief from the final judgment, arguing the district court "made a manifest error of both law and fact by failing to include an express statement finding a genuine issue of

6

material fact as to where Koster's gun was pointed immediately before he was killed." ([Filing No. 103 at 15](#).) According to Sanzone, "[h]ad this Court stated unequivocally that there was a genuine factual dispute surrounding the direction Koster's gun was pointed, the Circuit Court would have had no choice but to dismiss the appeal for lack of jurisdiction." *Id.* at 2. "If this Court truly assumed as undisputed that Koster pointed his gun at the officers before he was killed, then the Estate will accept defeat and this case will be over." *Id.* at 8. "But, if the Court did not make such an assumption (as the plain language of its decision suggests), then this case cries out for the relief that only Rule 60(b) can provide." *Id.*

Defendants respond with two arguments. First, the Court of Appeals considered Sanzone's argument and rejected it; thus its "holding constitutes the law of the case, and it cannot be reversed by this Court." ([Filing No. 104 at 4](#).) Second, even if the Seventh Circuit had not conclusively ruled on this matter, "the Estate fails, even at this late stage, to explain *why* there is a dispute of fact on this issue." *Id.* (emphasis in original). "Throughout its seventeen-page motion, the Estate makes no mention of any evidence that would put the fact [that Koster pointed his gun at the officers] in dispute." *Id.*

The law of the case doctrine, based "on the salutary and sound public policy that litigation should come to an end," holds "that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991) (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967)). "The doctrine 'expresses the practice of courts generally to refuse to reopen what has been decided,' but it does not 'limit [courts'] power.'" *Musacchio v. U.S.*, 136 S.Ct. 709, 716 (2016) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (brackets original)).

7

Defendants point out correctly that the Court of Appeals considered Sanzone's argument and rejected it. The Court of Appeals read the Court's Order on Summary Judgment differently than Sanzone, finding that the district court did assume Koster pointed his firearm at police.

> Specifically, the Estate asserts that the fact that Koster pointed a gun at the officers is "conspicuously absent" from the district court order and so the fact was not assumed to be true. But that is incorrect. In reality, the judge said: "Koster became more agitated when the officers refused to leave and informed the officers that he intended to 'fire a warning shot.'…he began to raise up his arm that was holding the handgun…Koster's arm came to a full extension." To support those facts, the judge cited Gray's deposition testimony in which Gray said, "Koster's arm came essentially to full extension. It was pointed out towards us." The judge assumed that Koster raised his hand and pointed his gun at Gray and the other officers in the doorway.

*Sanzone v. Gray*, 884 F.3d 736, 739 (7th Cir. 2018). The Court of Appeals specifically found that

> At summary judgment the Estate never disputed the defendants' assertion, supported by evidence, that 'Koster brought his arms to full extension and pointed his gun directly at the officers.' Moreover, in its response, the Estate included Gray's statement that Koster pointed the gun, and then did not dispute it. The Estate therefore admitted the fact, *see* S.D. Ind. L.R. 56.1(f)(A), and cannot dispute it for the first time on appeal.

*Sanzone*, 844 F.3d at 739.

This Court did not include an unequivocal statement in its summary judgment order that the direction of Koster's gun was genuinely disputed, because it could find no designated evidence to support such a statement. The Court of Appeals ruled on a paper record, just as this Court did at the summary judgment stage. The Court of Appeals determined the purely legal issue of whether qualified immunity applies to Officer Gray, a matter clearly within its jurisdiction. *See Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014) ("deciding legal issues of this sort is a core responsibility of appellate courts").

This Court is bound by the rulings of the Court of Appeals and will not find an appellate ruling to be erroneous. *Isby v. Bennet*, 2016 WL 5851603 at *2 (S.D. Ind. 2016). The Court of

Appeals determined that it had subject matter jurisdiction and issued a Mandate to this Court reversing the Entry on Defendants' Motion for Summary Judgment and directing the Court to enter judgment in favor of Officer Gray. ([Filing No. 98](#).) The law of the case required this Court to likewise enter judgment in favor of the City of Indianapolis on the remaining state law claims. This Court complied with that Mandate and will not grant relief from judgment in contravention of an order from the Court of Appeals.

## IV. CONCLUSION

For the reasons discussed above, Sanzone's Motion for Relief from Judgment ([Filing No. 103](#)) is **DENIED**. This action is terminated with respect to all defendants, including the Other Unknown Officers and Personnel of the City of Indianapolis *in their official capacities*.

**SO ORDERED.**

Date: 12/28/2018

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
alowe@rwp-law.com

James Piatt
RILEY WILLIAMS & PIATT, LLC
jpiatt@rwp-law.com

William N. Riley
RILEY WILLIAMS & PIATT, LLC
wriley@rwp-law.com

William Edwin Wendling, Jr.
COHEN GARELICK & GLAZIER
wwendling@cgglawfirm.com

Joseph N. Williams
RILEY WILLIAMS & PIATT, LLC
jwilliams@rwp-law.com

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
adam.willfond@indy.gov